# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. '22 MJ3748
)
Silver Apple iPhone )
Seized as FP&F No. 2023565300002302 Item 0002 )
("Target Device 3") )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Giancarlo Lugo, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____*)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Giancarlo Lugo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date: 10/13/2022

*Judge's signature*

City and state: San Diego, California       HON. Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

> Blue Apple iPhone
> Seized as FP&F No. 2023565300002301 Item 0004
> (**"Target Device 1"**)
>
> Blue Apple iPhone
> Seized as FP&F No. 2023565300000302 Item 0001
> (**"Target Device 2"**)
>
> Silver Apple iPhone
> Seized as FP&F No. 2023565300002302 Item 0002
> (**"Target Device 3"**)

2. The (**"Target Devices"**), as further described in Attachment(s) A-1, A-2, and A-3, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

3. The requested warrant(s) relate to the investigation and prosecution of Edgar Joel DIEGO and Brian Anatolio DIEGO for transportation of illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient

1

probable cause for the requested warrant(s) and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

5. I have been employed by the USBP since 2008 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for ten years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

6. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

7. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

8. Through the course of my training, investigations, and conversations with

other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

9. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to

3

months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

10. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

11. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

12. On October 9, 2022, Border Patrol Agents J. Munoz and R. Rojas were performing their assigned duties in the Brown Field Border Patrol Station's area of responsibility. At approximately 6:05 PM, Agents Munoz and Rojas, parked at Call Box 324 on State Route 94 (SR-94), and observed a dark colored Chrysler 300 run a stop sign at the intersection of Summit Road and SR-94. Agents Munoz and Rojas began to follow the vehicle east on SR-94 and Agent Munoz observed the vehicle driving around traffic and abruptly turn north onto Barrett Lake Road. Agent Munoz notified Agent Rojas, that the vehicle was driving erratically and at a high rate of speed and that it ran another stop sign. At approximately 6:10 PM, Agent Munoz observed the vehicle come to a stop and three individuals, dressed in camouflage and dark clothing, exit the vehicle. The vehicle then took off, while the three individuals ran west up a steep mountain.

13. Agent Rojas arrived and began to pursue the three individuals, while Agent Munoz began to follow the vehicle north. At this time, Agent Munoz now observed the vehicle driving south on Barret Lake Road towards him at a high rate of speed. The vehicle swerved at the last second, striking Agent Munoz' vehicle. The impact caused the vehicles side passenger mirror to get damaged and also caused minor damages to Agent Munoz

vehicle. At approximately 6:14 PM, Border Patrol Agents D. Zamora and K. Huggins responded to the SR-94 and Barret Lake Road intersection and blocked it. As the vehicle approached the intersection, it came to a complete stop and both agents approached the vehicle and detained, both the driver, later identified as the defendant, Edgar Joel DIEGO and the passenger, later identified as the defendant, Brian Anatolio DIEGO. Agent Huggins also noticed a glass marijuana pipe in the center console cup holder in plain view.

14. At approximately 6:18 PM, Supervisory Border Patrol Agent C. Wagner arrived to assist Agent Rojas in locating the three individuals that ran from the vehicle. After a brief search, Agent Wagner encountered two individuals, later identified as material witnesses, Ruben SANCHEZ-Hernandez and Usiel SANTOS-Cruz, dressed in camouflage attempting to hide in the thick brush. At the same time, Agent Rojas encountered one individual, later identified as material witness, Fernando HERNANDEZ-Aispuro, dresses in all black also attempting to hide in the thick brush. This area is approximately six miles west of the Tecate, California Port of Entry and approximately six miles north of the United States/Mexico International Boundary.

15. Agent Rojas identified himself as a Border Patrol Agent and both he and Agent Wagner conducted an immigration inspection on all three individuals. HERNANDEZ, SANCHEZ and SANTOS, stated that they are citizens of Mexico without any immigration documents allowing them to enter or remain in the United States legally. At approximately 6:30 PM, Agents Rojas and Wagner placed HERNANDEZ, SANCHEZ and SANTOS under arrest. At the same time, Agent Munoz placed E. DIEGO and B. DIEGO under arrest.

16. At the time of Edgar Joel DIEGO's arrest, a blue Apple iPhone, (**Target Device 1**) was found plugged in the center console of the vehicle. **Target Device 1** was subsequently seized. Upon apprehension, E. DIEGO claimed ownership of the **Target Device 1**. At the time of Brian Anatolio DIEGO's arrest, a blue Apple iPhone (**Target**

6

Device 2) and a silver Apple iPhone (**Target Device 3**) were found on the front passenger floor area. **Target Device 2** and **Target Device 3** were subsequently seized. Upon apprehension, B. DIEGO claimed ownership of **Target Device 2** and **Target Device 3**.

17. Material Witnesses, HERNANDEZ, SANCHEZ and SANTOS stated they are citizens of Mexico without immigration documents allowing them to enter or remain in the United States legally. HERNANDEZ stated that smuggling arrangements were made prior to entering the United States and were going to pay between $7,500 and $9,000 USD. HERNANDEZ and SANCHEZ stated that once they arrived at the pick up location, the foot guide told them a black car was going to pick them up. HERNANDEZ stated that there were two occupants in the vehicle and that once they got into the vehicle, they crouched down with their heads ducked down under the rear seats. SANCHEZ stated that once the vehicle arrived, the driver in Spanish told them to get into the vehicle. HERNANDEZ stated that the driver told them that they were the ones picking them up. HERNANDEZ and SANCHEZ stated that after driving for a while, the driver instructed them to exit the vehicle.

18. SANTOS stated that HERNANDEZ walked them to the pick up location and instructed them to get into the vehicle once it arrived. SANTOS stated that HERNANDEZ told the driver to drive faster when they were being followed. SANTOS stated that once the vehicle stopped, HERNANDEZ told them to run.

19. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that Edgar Joel DIEGO and Brian Anatolio DIEGO were using the **Target Devices** to communicate with others to

7

further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as E. DIEGO and B. DIEGO to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on **September 9, 2022, through October 9, 2022**.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the

8

results using digital photography. This process is time and labor intensive and may take weeks or longer.

21.  Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22.  Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

23.  Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

24.  Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

25.  Because the **Target Devices** were seized at the time of E. DIEGO and B. DIEGO's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **September 9, 2022, through October 9, 2022**.

9

26. Accordingly, I request that the Court issues warrants authorizing law enforcement to search the item(s) described in Attachment(s) A-1, A-2, A-3 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Giancarlo Lugo
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __13th__ day of October 2022.

Hon. BARBARA L. MAJOR
United States Magistrate Judge

10

## ATTACHMENT A-3

PROPERTY TO BE SEARCHED

The following property is to be searched:

Silver Apple iPhone
Seized as FP&F No. 2023565300002302 Item 0002
**("Target Device 3")**

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone(s) described in Attachment(s) A-1, A-2, and A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone(s) for evidence described below. The seizure and search of the cellular telephone(s) shall follow the search methodology described in the affidavit submitted in support of the warrant(s).

The evidence to be seized from the cellular telephone(s) will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **September 9, 2022, to October 9, 2022**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.